Good morning, Your Honors. Deputy Federal Public Defender Vi Williams appearing on behalf of Petitioner-Appellant Roberto Luna. Susan Luna lied at trial, and the prosecutor, Davian Mitchell, should have known and would have known that Susan Luna lied at trial had she recognized the red flags, acknowledged the red flags that existed, and dealt with them accordingly as required under Federal law, ABA rules, and the professional rules of responsibility. Is that, and I'm asking because I don't know, is that the natural standard IE, does should have known count, or does it have to be new? New or should have known. Either or. And wasn't there a hearing, and the magistrate judge credited her testimony? So it's a credibility problem? There's a credibility problem with respect to her testimony. Her testimony as well as, when you say her, are you referring to the district attorney or? District attorney. The district attorney, the issue with her is that she should have known that Susan Luna lied at trial. So that the magistrate's finding was clearly erroneous. Is that your contention? That is what we're contending, Your Honor. We're contending that, and we're contending that the U.S. district court erred when it forbid admission of Susan Luna's declaration, and we're also contending that the U.S. district court. admitted, you then would have a credibility contest. And the magistrate said, as Judge Minor mentioned, it came down to credibility, and the magistrate credited the DA's version. That's correct, Your Honor. The issue, the problem with her. And your trial brief said it comes down to who is more credible, the Petitioner or the district attorney. And so, as Judge Minor said, we would have to find that the magistrate crediting the district attorney rather than the Petitioner, that the magistrate was clearly erroneous in doing so. And that's, on some level, that's correct, Your Honor. The problem with how the district attorney's testimony and the problem with how the district court determined whether that he found that Susan, that the district attorney should not have known or did not know that Susan Luna was relying on trial was the manner in which they went about it. The court ended up finding that 80 to 90 percent of victim, alleged victim witnesses in rape cases recant or change their stories. And then it further went on to find that because, in fact, he had never personally seen anyone actually prosecuted for perjury for having recanted in a rape case, that, therefore, somehow her testimony was not trustworthy and was not credible, and, therefore, the declaration should not come into evidence. The issue that we take with that analysis is that perjury is perjury. The law is the law. And the fact that the district court went about determining that Susan Luna's testimony was not credible and that the district attorney's testimony was credible by going on his personal experience as opposed to applying the law is problematic. There are at least three different circuits who have determined that whether or not someone's testimony is subject to criminal liability. There are factors that are considered in U.S. v. Garrett, which is a Second Circuit case, in U.S. v. Alvarez, which is a Fifth Circuit case, and in U.S. v. Barrett, which is a First Circuit case. All of them have clearly stated that in order to determine whether or not someone is subject to criminal liability, it's not based on whether or not you happen to be a rape victim who has never been, and this Court particularly doesn't, hasn't ever seen someone prosecuted for that. It's actually based on whether statements that someone has given, subject one, whether or not they would be probative in a trial situation against the declarant. In this case, her declaration, had she been prosecuted, it would have been probative in a trial. And therefore, that is the standard, on some level, that the Court should have used as opposed to going on its personal experience that it had personally never seen. Kagan. And it would be helpful to me if you explained why, even assuming that Susan was lying, that the DA should have known this. There are a number of. Or knew it. You certainly don't have any evidence that she knew it. No, we don't. We would submit that there were a number of factors. One is that, cumulatively, should have given the district attorney pause to investigate. Let me back up for a minute. Where do you get the should have known language as being sufficient? In, I believe it's Napui. Yeah. And Angers. Well, Napui, as far as I can see, says what he knows to be false. The standard that the district court gave us to prove or disprove was that the State that the declaration was material, that Susan Luna lied at trial, that the deputy district attorney knew or should have known. And those were the elements that we were given to work with based on the arguments that we had made. Okay. So go on and tell me what she should have known. There were several things that the district attorney knew before a trial. She knew that Susan Luna was divorcing. She knew that there had been numerous splits in getting back together with the defendant, with Mr. Luna. She knew that Susan Luna was saying that Mr. Luna was really drunk when he came home that night. She knew that after she had had the instrumentality she alleged that she had been raped with, had no evidence, physical evidence whatsoever. She also knew that one of those instrumentalities had been found back in the guest bedroom. One of the instrumentalities that she allegedly had been raped with, which was a toothbrush, was found back in the guest bedroom in the toothbrush holder. All right. All of this might lead to the conclusion that she could have investigated and found out something. Yes. But is that what should have known means, or does it mean given what she knew, any sensible person would have known this, as opposed to she had some other obligation, other than not to present false testimony? We would argue both, and here's why. We would argue that she should have known based on the facts that were there. She should have also known based on her obligation as a prosecutor, as an officer of the court, to investigate and or find exculpatory evidence in certain cases. In Mitsvi Whiteside, which is a U.S. Supreme Court case, the Supreme Court found that prosecutors have a duty to prevent and disclose frauds. There were so many different flags that were out there for her to investigate, but she chose not to. Instead, when she testified at the evidentiary hearing, she said, quote, I never interview my victims with respect to what happens to them, ever. That was a practice of hers. Kamenov-Bibui, which is a Ninth Circuit case from 2001, clearly indicates that she had, that a prosecutor who, a bad faith effort not to potentially collect, not to collect potentially exculpatory evidence violates the due process clause. So we would argue that it's both. She has an obligation, she should have known based on the facts, and she should have known based on her obligation, her basic obligation as a prosecutor in this case, to not necessarily convict someone, but to uphold the law and to seek out the truth. Another point that we would like the Court to consider. The magistrate judge accredited the district attorney's testimony and found that at no time did Suzy Luna tell Mitchell that her allegations were false or that she wanted to change her story. Is that true? That's what he, that's what the district court found. Is that a proper finding? It is true. Go ahead. I'm sorry. It is true that she, there's no evidence in the record that she said to, directly to Davianne Mitchell, the prosecutor, I am lying. However, there were so many, she never, again, that Davianne Mitchell never directly interviewed her, and there were so many different factors that would have, should have prompted her to interview her and find out and look for other evidence that she was, we're arguing that the district court was remiss in finding that she was not, that she should not have known. We would further argue that the district court's determination that Suzy Luna's declaration does not come in under a statement as against interest or under the residual exception is problematic as well. Under what? I'm sorry. The test is that the declaration or the information so far tended the declarant to civil or criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. And then the caveat to that is that a statement like that that's coming in that's exposing the declarant to criminal liability has to have corroborating circumstances that clearly indicate the trustworthiness of the statement. A number of Mr. Luna's family members came to trial, came to the evidence you're hearing and stated, Susan Luna told me that she lied at trial. Susan Luna told me that she lied at trial. Arguably, yes, that is hearsay. However, it doesn't, on its face, in other words, but it's not being offered for the truth of the matter asserted. What it's being offered for is the effect on the hearer and in the state of mind of Susan Luna when she made the statements. She made them randomly. She made them for months at a time. In a couple with that, she spent over $50,000 to undo what she had done. She drove over four hours regularly to see Mr. Luna with his mother. There were so many things in this case. And even after that, though, she gave this statement to the State investigator after recanting her recantation. That is correct, Your Honor. However, the problem with that is at one point in that statement, when she did make that statement to the AG's office, she also said that she had no idea what she was signing, et cetera, et cetera, and the Court specifically found in its decision that he didn't believe that part of her testimony. Well, it's hard for the Court to determine when you have so many different versions that she gives. I understand that, Your Honor. But the fact of the matter is, a lot of weight needs to be given to what's going on here. Mr. Luna is looking at 30 — is serving 36 years in prison, and it's not a half sentence. It's not the traditional State half sentence. He's doing at least 80 percent of that time, all in a he said, she said, he said, she said situation. When you have a prosecutor who not only had the flags that sort of indicated to her that she should have been more diligent about actually questioning the victim, the only percipient victim, that witness that was in the room at the time, and — I'm sorry. I lost my train of thought. But the long and short of it is, Your Honor, the district court was in error when it determined that the declaration was not — was not admissible. We would also submit that the — that Susan Luna lied at trial. The declaration supports that. The supporting statements by all the witnesses, some of whom are in the audience and are Mr. Luna's family members, some of those statements also support that declaration. And for the district court to have used its personal experience basically stating, you know, it hasn't been my experience. I have never seen a witness who was an alleged rape victim who recanted being prosecuted by the AG's office. Because I haven't seen that, therefore, it makes it less likely that she's subject to criminal liability, that takes it out of the realm of the law and puts it into the realm of what the court's personal experience is. And with that, and based on that, at minimum, Mr. Luna should — relief should be granted to Mr. Luna, or at minimum, the district court should — this case should be remanded and the district court should be required to look at it from the perspective of the law as opposed to the perspective of its personal experience. And with that, at this point, I would submit. Thank you, counsel. Good morning, Your Honors. May it please the Court. Deputy Attorney General Teresa Patterson on behalf of the warden. Could you answer Judge Berzell's question about whether it's — whether it's new or should have known? Is that the right standard? I believe there's some language in the case law saying — including the should have known language, but it's directed at situations when knowledge should be imputed to the prosecution. It's — In that Bowie case where there was a letter where somebody said that they were fabricating. Correct. And the notion is essentially that you don't have — we're not going to go into the question of whether you knew it to be true, but you certainly had a piece of paper saying it to be true. Correct. The prosecution can't turn a blind eye on evidence that's within its reach or to only open its eyes. But in this case, you have a victim who gave her version of the events to the police officers, and she did that on several different occasions. And — But what about the prosecutor who says they don't want to talk to the victim? And if there's a question of whether the victim's telling the truth, do you think it matters whether the prosecutor says — shouldn't turn a blind eye, but what is refusing to talk to the victim? It wasn't so much a refusal to talk to the victim. It was she chose not to interview the victim about the facts of the case. What does that mean? I don't understand how you can possibly prosecute a case without interviewing the victim about the facts of the case. How does somebody put on a case that way? She relied on the police officers to do that task. And when the case came to me — But doesn't she have some responsibility to find out whether this is in fact — to find out whether her witnesses are actually telling the truth by discussing it with them? I — this victim had been interviewed by several police officers, and including on videotape, the prosecutor viewed the videotape. I don't think — But defense witnesses often will say they don't — I mean, defense lawyers will say they don't do that, because their job is to defend the case, not to — and not to put them in a position with their defendants. Well, not to determine the truth if you're a defense lawyer. It is if you're a prosecutor. The prosecutor explained that the reason she did this was to avoid putting the victim on the defensive, because in many domestic violence cases, a victim will recant. And in the event the victim recants, the district attorney would then introduce prior and consistent statements. And she did not want to create a situation where the victim viewed her as an adversary person. And for that reason, she relied on what was contained in the police report. It is just in this type of case that the prosecutor declines to interview? Yes. She — the prosecutor explained at the evidentiary hearing that it is only in domestic violence cases that she follows this practice. Let me ask something I don't understand. What did the State court decide about this whole issue? You don't seem to know that. This — pardon me? That doesn't seem to be figuring in the magistrate judge's opinion in any place. What did the State court decide about the overall claim? The recanting. The recanting. The recantation was included in the declaration submitted to the California Supreme Court. There was a silent denial. So why wasn't the declaration admissible as a — as a statement against penal interest? For several reasons. First, it wasn't sufficiently against her penal interest, given circumstances, that she would not have made the statement unless they were true. And that's true for several reasons. Although technically she was exposing herself to liability for perjury, there are other factors that are countervailing. And those include that this was a domestic violence victim. And it's very common. But that doesn't make a lot of sense. I mean, the fact is she was exposing herself to prosecution for perjury. And apparently from her next statement or some statement down the road, that seemed to be — have something to do with her recanting of the recanting. I mean, why wouldn't somebody be concerned about exposing herself to perjury, domestic violence or not domestic violence? I believe that would have — that would be a potential concern. But I think the desire to recant and to protect or — I don't know what her motivation was. There are a number of plausible motivations that may have existed. But due to the fact that it's well documented that domestic violence victims recant in a high percentage of cases, and there was a lot of testimony about this trial. But it's not exactly why you have to have a hearing and figure out whether this one is lying or not. Well — Or use whatever evidence you have rather than throwing it out. I mean, unless we're going to have a rule that no domestic violence victim can recant. Your Honor, you're picking up on the crux of this case, is that Petitioner wants to rely on a declaration. There was no testimony at the evidentiary hearing from this witness. Because she was exposed to perjury. Correct. But nevertheless, he has — he cannot prove his case based on a declaration that is hearsay. It's not reliable. And on top of the fact — okay. Even if you were to meet that prong two of Federal Rule of Evidence 804b-2, if you move on to prong three, you have to have corroborating circumstances clearly indicating the trustworthiness of the statement. And here, it's untrustworthy for several reasons. This victim never wanted the defendant prosecuted in the first place. At trial, she testified that she still loved the victim. She did not want him to go to jail. She was reluctant to have him prosecuted. So from the start, she didn't want him to be in jail. And so it's not surprising that she would be highly motivated to undo the conviction after the fact. Also, there were two independent witnesses in this case who corroborated the testimony of the victim. The victim's brother testified at trial that he heard his sister inside the bedroom making sounds of protest, saying, ouch, and it hurts. He testified that she wanted — she was very distraught and wanted to leave the premises or he eventually convinced her to leave the premises immediately with their young children. In addition, at the evidentiary hearing, the brother's girlfriend, who was also in the house at the time of this attack, testified at the evidentiary hearing. She had not testified at trial, although she testified at the evidentiary hearing and corroborated the victim's testimony and the victim's brother's testimony. And the fact that these percipient witnesses testified and were cross-examined and contradicted statements contained in the declaration provide further evidence that the declaration is not trustworthy. Furthermore, Susan Luna eventually repudiated or recanted the recantation declaration when she spoke to our investigator. And while I would agree that her explanation given at the time that she did not read the declaration before signing it, that's not believable. And I agree with the Petitioner's attorney on that point, and that's what the magistrate judge found, that the fact that she funded the appeal tended to discount that explanation that she provided to our investigator. Nevertheless, she distanced herself from the recantation and she reaffirmed her trial testimony. What Petitioner is trying to do is replace the victim's sworn testimony at trial that was subjected to vigorous cross-examination with a declaration that we have been unable to cross-examine. And it is our position that her trial testimony is much more reliable because it was subjected to cross-examination, and that that should not be undone by a declaration that has never been subjected to cross-examination. Finally, the recanting declaration itself is inconsistent with the defense theory of the case that was presented at trial. At trial, the defendant testified and suggested that it was the victim's – that the defense will encounter that night, and the recanting declaration paints a much different picture, and that's one further reason that the declaration is not corroborated and is not reliable. Unless the Court has any further questions, I will submit. Thank you, counsel. Thank you. Okay. Is that the time that's left? Yeah. You have three and a half minutes, basically, left. Thank you, Your Honors. Addressing some of the concerns of the Court and some of the statements made by the Attorney General's Office, the declaration that Susan Luna submitted corroborates the case that was presented at trial. Corroboration must clearly indicate trustworthiness. The declaration that Susan Luna submitted is trustworthy. In Luna v. Cambria, which is a Ninth Circuit case which was overruled on other grounds, this Court decided that a declaration was – a declaration was – had an issue of trustworthiness if, because it was on paper, because it was under oath, because it was presented to a court of law, because – and because there was no statement that it was made unwittingly, and because there was no evidence that the statement was made just to help the defendant. We have all those factors in this case. In addition to those factors, we have the fact that Susan Luna, a mother of two small children who made approximately $30,000 a year and had a high school education, went into debt to the tune of $50,000 and more in order to undo what she had done, putting Mr. Luna in jail for 36 years. We also – At the hearing where the declaration was not accepted, was there a direct live testimony from the district attorney? Yes. And it was at that point when she made the statement that she had never – she never interviewed rape victims. But she also went at great length about why she believed this person and why the judge believed this person and why she was unusually convincing and so on and so on. Yes. That's correct. But when – question on cross about some of the red flags that should have been clear indications to her that there were some problems, for example, additional facts, the fact that Susan Luna had either thrown away or washed the clothing several times, the fact that in one of the police reports, she had refused – according to the police report, she refused to do a rape kit exam, the fact that she on the stand – and the district attorney acknowledged this – on the stand, Mr. Luna's ex-wife, Connie Martin, stated, you know, I think that the – I think that Susan Luna's lying. And she said it twice. And she had also said it to her outside of the – prior to her being put on the stand, at which point she was declared a hostile witness by the prosecutor – by the attorney. In addition to the fact that the declaration is trustworthy, we would also add that when you read Hayes v. Brown, which is 399 F. 3rd 972 from this Court as well, that the court clearly state – has clearly stated that NAPUI violations require that the conviction be set aside, quote, whenever any reasonable likelihood that false statement could have affected the judgment of the jury is present. Here, on some level, the jury didn't believe Susan Luna, in part, when it acquitted Mr. Luna of having raped her with the knife, the bottle, and the toothbrush, and rightfully so. That, coupled with the fact that some of the physical – the physical nature of this case, Susan Luna alleged that she had been raped for over an hour by her husband, who was very drunk, in a dark room, and that he had abused her with various different items, is just not feasible. So just because I'm curious, how did this end up to be a 36-year sentence? She – Mr. Luna, I believe, had been given the offer, I believe it was of a 15-year sentence, and he repeatedly stated, I didn't do this, I didn't do this. And based on that, they withdrew the offer and calculated it. They had also calculated in a alleged rape that had taken place in February of – I mean, September of the year 2000. So it was a couple of allegations plus the fact that he had been raped. Kagan. That's a three-strike sort of a problem, I guess. No, no. It was cumulative. No, it was cumulative. A second. Mm-hmm. And that is a concern, a huge concern. The final thing – Was it his wife also or somebody else? Of his wife. He had – she had claimed after she – after – in February of 2001, when she had said that Mr. Luna had raped her, she also told the district attorney – or the police officers that he had raped her in February – the previous – September of 2000. However, again, another red flag for district attorney Mitchell, she – the – with that alleged rape, she had claimed that she had vomited and urinated on herself during that rape on the carpet in their bedroom. Not once did Davian Mitchell testify at the evidentiary hearing that she – it was within her purview in that three-month or four-month span between September and February of the following year to go – I mean, to – it was within her purview after the February incident to go back to the house and collect evidence and test the carpeting for those – for samples of urine or samples of vomit. But she chose not to do so. She convicted Mr. – she prosecuted Mr. Luna with no physical evidence in either one of those cases. There was absolutely no physical evidence to – to establish that he had done what Susan Luna alleged he had done. And those two were the only two people in the room. The prosecutor – the attorney general had stated – We can give you about one more minute. You've actually been about ten minutes over. My apologies, Your Honor. The – the long and short of it is we would ask the court to do two things. Find that the district court erred when it forbid in Ms. Susan Luna's declaration under the statement against interest or under the residual exception to the hearsay rule, and also determine that the district court erred when it determined that Susan Luna – there was no evidence to support that David Mitchell should have known that Susan Luna was lying. The other thing that the court – if the – if the court can find either one of those things, we would ask the court to either grant Mr. Luna relief in its entirety or, in the alternative, remand the case back to the district court to require that the district court make findings that – make findings within the purview of the law as opposed to its personal experience with respect to the issue of it never having seen a rape being prosecuted for perjury. And with that, we would submit. Thank you. Thank you, Your Honor. The case case to argue will be submitted. And final case of the morning is United States v. Gonzalez Valdez.
judges: Reinhardt, Berzon, Miner